No. 80-280

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

OSCAR A. SWENSON, M.D.; RICHARD A.
NELSON, M.D.; ABC COLLECTORS, INC.,
et al.,

                              Plaintiffs and Respondents,

    vs.

BUFFALO BUILDING CO., a Montana Corporation,

                              Defendant and Appellant.

Appeal from:  District Court of the Eleventh Judicial District,
              In and for the County of Flathead.
              Honorable James Salansky, Judge presiding.

Counsel of Record:

    For Appellant:

        Warden, Christiansen & Johnson, Kalispell, Montana
        Merritt C. Warden argued, Kalispell, Montana

    For Respondents:

        E. Eugene Atherton argued and Jim Moore argued,
         Kalispell, Montana
        Morrison Law Firm, Missoula, Montana
        Frank Morrison Sr. argued, Missoula, Montana
        McGarvey, Lence and Heberling, Kalispell, Montana

                              Submitted:  June 16, 1981

                              Decided:  September 28, 1981

Filed:  SEP 29 1981

*Thomas J. Kearney*
_____
                    Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant Buffalo Building Company (Buffalo) appeals from the jury verdict and judgment of the District Court, Flathead County, The issues center on the Uniform Building Fire and Safety codes of Kalispell.

Buffalo presents the following issues for review:

1. Defendant Buffalo's main issue is whether the trial court properly denied its motion to retract certain admissions regarding the effect and validity of uniform building, fire, and safety codes purportedly adopted by the City of Kalispell, the motion to retract having been made two work days before trial.

2. To show that such denial constitutes reversible error Buffalo presents the issue whether cities had the power to adopt technical codes by reference prior to 1967, when the Montana legislature passed a bill specifically giving to cities such power. Included as subissues are:

a. Did the trial court properly deny Buffalo's motion in limine to exclude mention of the technical codes, and properly grant tenants' motion in limine to prevent Buffalo from contesting the validity of the codes?

b. Were exhibits concerning the codes properly received into evidence?

c. Was the jury properly instructed as to the applicability and effects of the codes?

3. Buffalo argues that the codes were irrelevant in any event under their own terms.

4. Buffalo asserts that certain of its proposed instructions concerning landlord/tenant relationships should have been given and certain of the court's instructions should not have been given.

-2-

5. Buffalo cites as error the awarding of prejudgment interest, and of costs for telephone charges, photocopies, exhibits and supplies, consultant fees, and witness fees to the tenants.

We affirm the lower court's denial of Buffalo's motion to retract the admissions. Therefore, we need not discuss issue no. 2 or its three subissues. Many of the instructions which Buffalo cites as error also need not be addressed because they involved provisions of the technical codes. We affirm the awarding of costs, but we reverse the award of prejudgment interest.

Buffalo purchased an older building in Kalispell in 1956, renovated it, and rented it out as commercial and office space. The plaintiffs were all separate tenants in the building. In 1976, the building caught fire and was totally destroyed, the fire apparently caused by the acts and nature of work of another tenant, the Flathead Dental Laboratory. Two separate actions were brought, on June 20, 1978, and September 6, 1978, which were eventually consolidated into this case. The tenants alleged negligence by Buffalo in failing to install adequate fire protection materials into the building, and negligence per se in failing to fully comply with city building, fire and safety code specifications. Buffalo denied all allegations.

The codes involved here are the 1946 and 1973 Uniform Building Codes, the 1973 Life Safety Code, and the 1970 Fire Prevention Code.

The tenants sought to establish certain elements of their case during discovery through the use of requests for admissions, pursuant to Rule 36, M.R.Civ.P. Section 104(b) of the Uniform Building Code, 1946 Edition, provides that if the cost of

alterations to an older building in any one year exceeds 50 percent of the value of the building itself, the building shall be made to conform to the requirements for new buildings. The tenants requested Buffalo to admit that the cost of repairs and remodeling in the year of purchase had exceeded 50 percent of the building's value.

The request for admission was dated May 9, 1979. Buffalo admitted the allegation by default as provided by Rule 36(a), M.R.Civ.P.: ". . . . The matter is admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney . . ." The admission by default was not mere oversight by counsel for Buffalo; tenants' counsel wrote to Buffalo's counsel on June 13, 1979, to inquire about the status of the request for admissions, and Buffalo's counsel responded, by letter dated June 18, 1979, "I have not felt that it was necessary to prepare a formal reply to your Request for Admissions dated May 9, 1979, for the reason that under Provisions of Rule 36, those matters were deemed automatically admitted in the absence of a denial or other response."

The District Court scheduled trial for October 9, 1979, and a pretrial conference for August 29. The tenants prepared a pretrial order, which was signed by the district judge and by all parties on August 15. Buffalo asserts that the pretrial order was never adopted by the District Court. The order was signed by the judge and it was entered in the docket, although it apparently was never filed, as the original is

not contained in the district court file (the tenants include a copy of the pretrial order in the separate appendix to their brief).

The tenants itemized 30 alleged violations of the uniform codes in the "Plaintiff's Contentions" portion of the pretrial order. It is clear, therefore, that Buffalo was aware of the basis for the tenants' claim of negligence per se. The order also contained 31 requests for admissions, the most crucial of which are as follows:

"9. That Kalispell City ordinance #515 was duly adopted by the City Council of Kalispell on September 3, 1946 and was in full force and effect at the time of the purchase of said building by the Defendant Buffalo Building Company, and at all times during the alteration of said building by said company during the year 1956.

"10. That the Uniform Building Code, as adopted and published by the Pacific Coast Building Officials Conference, on January 1, 1946 is that identified marked Exhibit A and at the time of the pre-trial conference, placed in the custody of the Court. That such code is that referred to in Ordinance #515 as aforementioned."

On the same day that the pretrial order was signed, August 15, Buffalo moved the court for an order permitting it to withdraw its previous admission regarding the value of the building and of improvements made therein (the admissions dated May 9). Buffalo sought to revoke its former admission for the reason that it had "mistakenly and inadvertently failed to analyze the wording contained" in the first request. Leave to revoke the admission was granted by the court over objection by the tenants. The tenants then requested a six-month continuance of trial "reluctantly", because they were now "faced with the necessity of independently proving" the values of the building and repair work. Trial was reset for April 14, 1980.

Buffalo filed its responses to the requests for admissions contained in the pretrial order on August 27, 1979. Requests

9 and 10 set forth above, and other, similar requests, were specifically admitted.

Three months prior to trial the tenants moved for summary judgment based upon all of Buffalo's admissions. Buffalo opposed the motion, arguing in its brief, for the first time, that it had never admitted the city technical codes were pertinent or applicable or had been validly adopted by the city council. The court then ordered counsel to prepare an amended pretrial order, specifically directing Buffalo to include in the amended order its contentions and position on nonapplicability of the various codes and the specific reasons for such nonapplicability. Neither party ever prepared an amended pretrial order. Buffalo argues that it was plaintiffs' responsibility to prepare all pretrial orders.

Two work days prior to trial, Buffalo moved to revoke its admissions contained in the pretrial order for the reason that the city technical codes had never been validly adopted and thus, any admissions based thereon were incorrect and not pertinent. A hearing was held where Buffalo argued that cities had been granted no power by the legislature to adopt a technical code by refence in 1946, any such adoption was a void act, and no evidence concerning the codes should be received at trial.

Buffalo's reason for requesting leave to amend this time: "[Counsel for Buffalo] assumed that counsel for Plaintiffs had investigated the assertion and honestly and correctly stated the factual situation but [Counsel for Buffalo] has now learned that such was not the case and that such assertion was incorrect and false."

The court denied Buffalo's motion, specifically finding that Buffalo had already delayed trial once by retracting an

admission and that its new motion went to the very foundation of the tenants' case, was not timely made, would cause another lengthy delay, and would subvert the rules of procedure and the orderly disposition of cases.

Buffalo moved in limine to exclude all mention of the technical codes at trial. The motion was denied. The tenants moved in limine to prevent Buffalo from arguing the invalidity of the codes at trial. That motion was granted.

Jury trial was held. The court received exhibits concerning the technical codes, and instructed the jury on the codes' applicability and effects. The jury returned a verdict in favor of the tenants and judgment was entered. The court then received motions and heard argument on the awarding of costs and prejudgment interest. Such interest was awarded to one tenant only. Buffalo appeals the denial of its motion to revoke its admission, the conduct of the trial, and the awarding of prejudgment interest and of certain costs.

I.

A party has no absolute right to file late answers to requests for admissions. The matter rests within the discretion of the trial court and will not be disturbed in the absence of a manifest abuse of discretion. State of N.D. v. Newberger (1980), ___Mont.___, 613 P.2d 1002, 1006, 37 St.Rep. 1119, 1124; Morast v. Auble (1974), 164 Mont. 100, 105, 519 P.2d 157, 159.

The District Court held a hearing on the defendant's motion on April 15, 1980. The court then found specifically that trial had been set to commence on April 16; that previously the defendant had been granted a similar motion to amend responses to requests for admissions, such order causing a lengthy delay in trial; that the defendants had failed to

timely assert their arguments concerning the validity of the technical codes' adoption even though the court had requested that such contentions be set forth; that another lengthy delay would result if the new motion was to be granted; and, that the defendants failed to provide the court with any justification for overturning an admission which had been deliberately drafted by experienced counsel for the express purpose of limiting and defining the issues.

The District Court concluded that the issues involved in the case were complex and involved the presentation of expert witnesses from out of the regional area; that the subjects of the motion went to the very foundation of the plaintiffs' case and had been relied on by the plaintiffs; that the motion was due to insufficient and untimely investigation of the issues and facts by the defendants; and, that the rules of procedure and orderly disposition of cases would be subverted by allowing the retractions and amendments. The defendants' motion was denied.

The District Court did not manifestly abuse its discretion in denying the motion. The findings are supported by the record, and do provide a base for the conclusions. In addition, the conclusions properly apply the law.

Delay itself is increasingly recognized by courts as a problem. As this Court noted in the recent case of Owen v. F. A. Buttrey Co. (1981), ___Mont.___, 627 P.2d 1233, 1235, 38 St.Rep. 714, 717:

> "Crowded dockets have led more and more courts
> to overcome . . . [their] reluctance and reem-
> phasize the judicial responsibility to the public.
> Note, Rule 1, M.R.Civ.P., providing that the Rules
> of Civil Procedure be interpreted to 'secure the
> just, speedy and inexpensive determination of every
> action.' This Court recognizes that a predisposi-
> tion toward discovery sanctions, wherein we would
> resolve doubts about constitutional limitations and
> the purpose of our procedural rules in favor of re-
> straint, may be increasingly inappropriate given the

compelling need to maintain efficient and fair judicial administration."

Owen involved imposition of sanctions for delay during discovery, but the same concerns apply in this case, particularly because Buffalo had previously retracted an admission of fact, and had forced the tenants to request a postponement of trial in order to acquire new proof. To the same effect is Calaway v. Jones (1981), ___ Mont.___, 624 P.2d 991, 38 St.Rep. 340, where delay caused by a party's failure to appear at pretrial conference, together with his general unresponsiveness during discovery was found sufficient to justify entry of default judgment.

We affirm the trial court's action. The denial was within the bounds of the court's discretion.

Because of our holding on this issue, we do not need to address defendants' issues regarding error in the motions in limine, the majority of the court's instructions to the jury, the introduction of the technical codes into evidence, or the issue whether the codes were properly and validly adopted by the Kalispell City Council. The effect of the admissions was to conclusively establish the matters admitted. Rule 36(b), M.R.Civ.P.

II.

Buffalo argues that the technical codes should have been excluded as irrelevant under their own terms.

The jury was instructed that the Uniform Building Code, 1946 Edition, was in force and effect when the building was purchased and renovated, and the code included the following provision:

> "Any building or structure which is enlarged, altered, raised, repaired or built upon to an extent exceeding expenditure within any five year period of 20 percent of the value of the building or structure, shall be made to comply with all the requirements for fire resistance of

a new building or structure erected in Fire Zone
1." Section 1602(d). (Emphasis added.)

There was testimony that repairs to the building had
been made in 1956 at a cost of $205,000. The building
itself was valued at $450,000 to $500,000. Therefore, the
code did apply.

Buffalo further argues that there was no evidence in
the record to establish that the building was located in any
"Fire Zone 1." However, that was one of the facts Buffalo
admitted in the pretrial order (Request for Admission #12
and answer thereto dated August 27, 1979.) That was one of
the admissions which Buffalo moved to amend on the eve of
trial, which motion was denied by the court. As discussed
previously, the admission conclusively established that fact
for the purpose of trial. The code was properly admitted.

Buffalo also argues that the other technical codes were
irrelevant and their introduction caused prejudicial error.
The plaintiffs provided an expert witness at trial to establish
the relevancy of the technical codes. That witness had
extensive experience with the content and applicability of
the codes. His testimony was uncontradicted by any other
evidence or testimony. There was sufficient evidence in the
record for the issue of the codes' applicability to go to
the jury. The codes were properly received into evidence.

III.

Buffalo argues that the records of the Kalispell Fire
Department (Plaintiffs' Exhibit #27), materials from the in-
vestigation of the fire, constituted hearsay and should have
been excluded as a whole. Again, however, Buffalo had
stipulated in the pretrial order, under Section "E: Admission
of Facts and Documents Requiring No Foundation or Proof" as
follows:

"1. Report of the Kalispell Fire Department of
the fire of September 22, 1976, together with
all pictures and exhibits attached to the report."

Because, in the pretrial order dated August 15, 1980, Buffalo

agreed to the admission of those records as requiring no found-

ation or proof, Buffalo's objection to the report as hearsay was

properly denied.

IV.

Buffalo alleges that the court erred in giving one of

the plaintiffs' proposed instructions, dealing with concurrent

negligence, and also erred in refusing to give ten of Buffalo's

proposed instructions.  We find no error.

Plaintiffs' instruction no. 7 was as follows:

"There may be more than one proximate cause of an
injury.  When negligent conduct of two or more
persons contributes concurrently as proximate causes
of an injury, the conduct of each of said persons
is a proximate cause of the injury regardless of
the extent to which each contributes to the injury.
A cause is concurrent if it was operative at the
moment of injury and acted with another cause to
produce the injury.  It is no defense that the
negligent conduct of a person not joined as a party
was also a proximate cause of the injury."

There was evidence brought out at trial to the effect

that the fire started in the rooms leased to the Flathead

Dental Laboratory and that it was negligent.  The instruction

is fairly designed to meet an issue raised by the reports of

the fire department.

Buffalo cites error in the court's failing to give its

offered instruction nos. 1, 2, 3, 4, 5, 6, 8, 9, 11 and 13.

Nos. 1, 2, 4, 6, 11 and 13 are not presented with any citation

of authority showing them to be correct statements of the

law; Buffalo also neglects to point to evidence in the

record sufficient to justify giving the instructions.  The

instructions cited all deal primarily with landlord/ tenant

law and the duties owed thereunder.  The jury was adequately

instructed on both common law negligence and negligence per

se theories. The offered instructions were repetitions and conflicting, because they did not distinguish between the two theories in their application. The giving of conflicting instructions on a material issue has been held to be reversible error by this Court. Bohrer v. Clark (1978), ___ Mont.___, 590 P.2d 117, 124, 35 St.Rep. 1878, 1887. Also, repetitious instructions setting forth abstract principles of law should be avoided. O'Brien v. Great Northern Railway Company (1965), 145 Mont. 13, 22, 400 P.2d 634, 639, cert.den. (1967), 387 U.S. 920, 87 S.Ct. 2034, 18 L.Ed.2d 974. The trial court properly refused the instructions.

V.

Buffalo objects to the award of certain costs and of prejudgment interest to one of the plaintiffs.

The cost statute is section 25-10-201, MCA:

"Costs generally allowable. A party to whom costs are awarded in an action is entitled to include in his bill of costs his necessary disbursements, as follows:

"(1) the legal fees of witnesses, including mileage, or referees and other officers;

"(2) the expenses of taking depositions;

"(3) the legal fees for publication when publication is directed;

"(4) the legal fees paid for filing and recording papers and certified copies thereof necessarily used in the action or on the trial;

"(5) the legal fees paid stenographers for per diem or for copies;

"(6) the reasonable expenses of printing papers for a hearing when required by a rule of court;

"(7) the reasonable expenses of making transcript for the supreme court;

"(8) the reasonable expenses for making a map or maps if required and necessary to be used on trial or hearing; and

"(9) such other reasonable and necessary expenses as are taxable according to the course and practice of the court or by express provision of law."

Buffalo objects to the award of costs for telephone charges ($28.61), photocopy charges ($60.10), exhibits, supplies and photographs ($151.87), expert witness fees ($1500), witness fees in excess of ten dollars per day plus mileage ($1500), title company charges ($86.63) and miscellaneous charges ($6.25).

The plaintiffs submitted their memorandum of costs on April 28, 1980. They were awarded everything except the "depositions and transcripts" item, which was put at $256.63, and their requests for witness fees were pared to $1500 from $2,502.11 for expert fees and to $1500 from $2,648.33 for other witness fees. The District Court held a hearing on the motion to tax costs, after which it specifically found the remaining items to be reasonable and necessary costs under section 25-10-201(9), MCA.

A verified memorandum of costs and disbursements is prima facie evidence that the items were necessarily expended and are properly taxable, unless, as a matter of law, they appear otherwise on the face. The burden of overcoming this prima facie case rests upon the adverse party. Gahagan v. Gugler (1935), 100 Mont. 599, 607, 52 P.2d 150, 154. Buffalo has failed to carry its burden of showing that the items are not reasonable and necessary as found by the District Court.

Buffalo particularly objects to the $1,500 award for "witness fees", arguing that it clearly exceeds the ten dollars per day in attendance plus mileage allowed by section 26-2-501, MCA. However, the ruling of the trial judge on this item does not indicate on what ground it is based, the number of days that the witnesses were in attendance, or the amount of in-state miles they traveled. Under this condition, Buffalo's raising of questions is not sufficient to carry

its burden; "we cannot say whether the item of witness fees was properly allowed and we must therefore sustain the ruling of the trial judge . . ." Broberg v. Northern Pac. Ry. Co. (1947), 120 Mont. 280, 303, 182 P.2d 851, 863. We affirm the award of costs.

One of the plaintiffs was awarded interest for her losses as of the date of the fire. Section 27-1-211, MCA, provides as follows:

> "Right to interest. Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day except during such time as the debtor is prevented by law or by the act of the creditor from paying the debt."

The District Court awarded prejudgment interest upon motion of the plaintiff, after a hearing. The award was based on the plaintiff's testimony regarding the property that she lost in the fire and the value of such property. As set forth in the pretrial order, plaintiff claimed $43,917.15 for destruction of equipment, records, furniture and other personal property, together with loss of business profits. After the testimony of witnesses as to the value of these various items, the jury awarded the flat sum of $25,000. We do not find that this plaintiff has shown damages capable of being made certain by calculation as required under the statute. We, therefore, conclude that the order of prejudgment interest to plaintiff Conklin was in error.

We affirm the judgment with the exception that we reverse the award of prejudgment interest to plaintiff Conklin.

_____
Justice

-14-

_Frank I. Haswell_
Chief Justice

_Gen B Daly_

_John Conway Harrison_

_Daniel J Shea_
Justices